Everlee G. **FRANKS**, Appellant,

v.

**OFFICE OF EMPLOYEE APPEALS OF the DISTRICT OF COLUMBIA,** Appellee.

No. 86–592.

District of Columbia Court of Appeals.

Argued March 18, 1987.
Decided Nov. 10, 1987.

Dorsey Evans, Washington, D.C., for appellant.

Victor Long, Asst. Corp. Counsel, with whom James R. Murphy, Acting Corp. Counsel, Charles L. Reischel, Deputy Corp. Counsel, and Lutz Alexander Prager, Asst. Deputy Corp. Counsel, Washington, D.C., were on brief, for appellee.

Before MACK, Associate Judge, NEBEKER,* Associate Judge, Retired, and REILLY, Senior Judge.

REILLY, Senior Judge:

Before us on appeal is a memorandum opinion and order of the Superior Court affirming a decision of the Office of Employee Appeals (the agency), which in turn sustained the discharge of appellant—a physician on the staff of the Police and Fire Clinic—for "gross neglect of duty." It is undisputed that the incident which precipitated this disciplinary action was appellant's refusal to treat a retired police officer who had presented himself at the clinic suffering from chest pains. His ground for such refusal was that his duties at the clinic did not require him to perform medical services for retired police person-

nel. After examining the record of the agency proceedings, we discern no error in the action of the reviewing court,[1] and affirm.

A brief summary of the record follows:

Curtis Coleman, a retired police officer, arrived at the clinic one day complaining of severe chest pains. Pursuant to prescribed clinic procedure, a technician escorted Coleman to a room where his heart beat was tested by electrocardiogram. The tracings were then presented by the technician for interpretation and diagnosis to appellant, Dr. Franks, the only physician on duty at the time. Appellant refused to examine the tape, advising the technician that he was under no legal duty to handle retired persons' medical cases. The technician reported this response to the lieutenant on duty (apparently the clinic supervisor) who personally requested that appellant treat the patient. Appellant again refused. The clinic then arranged for Coleman to be transported by ambulance to a nearby hospital.

Shortly afterward, the Police Department demanded an explanation of appellant's actions. Based on his answer,[2] the department notified him that his employment was terminated for, *inter alia,* "gross neglect of duty." Prior to the effective date of his removal, appellant appealed to the agency. A hearing was held before an examiner, Remsky Atkinson. The department offered testimony with respect to the Coleman incident and also evidence to document the long-standing policy and practice of medical treatment for retired officers required of clinic physicians, going back to an order by the District Commissioners dated May 8, 1936, promulgated under the authority of D.C. Code

---

* Judge Nebeker was an Associate Judge of this court at the time of argument. His status changed to Associate Judge, Retired, on September 1, 1987.

1. Although litigants in contested cases in most local administrative agencies have the right to petition for review directly to this court, D.C. Code § 1–1510 (1981), a special statute provides that parties adversely affected by decisions of

the Office of Employee Appeals may appeal to the Superior Court. *Id.* § 1–606.3(d). *Kegley v. District of Columbia,* 440 A.2d 1013 (D.C.1982).

2. In a written memorandum, Dr. Franks said that he refused to treat retired officers because the District would not assume liability for any malpractice actions which might be brought by such patients against the clinic's medical employees.

§ 4–120 (1981),[3] and supplemented in later years by official memoranda.

Appellant himself was his only witness. He did not deny his refusal to provide medical advice to Coleman, but did attempt to show that the policy of making the clinic available to retired officers was based on an unauthorized exercise of power by the Commissioner, and thus had not established a clear directive or a legal duty on his part to treat the patient in question.

Prior to making his report, the hearing examiner retired. His caseload, including appellant's hearing transcript, was assigned to another examiner, Marlene J. Johnson, who reviewed the record of the hearing conducted by Atkinson, and submitted findings of fact and conclusions of law to support a recommendation that appellant be terminated. Subsequently, the agency approved these findings in a decision holding that appellant be removed from employment because of "gross neglect of duty."

■ In contending that the judicial affirmance of this agency decision was error, appellant points to a procedural departure from the agency's own rules of practice (OEA Reg. 609–4 and 624.2). These rules provide parties with a right to hearing followed by a recommendation from the presiding hearing official. As we have noted, the examiner who conducted the hearing retired without making such recommendation. In dealing with a similar situation in a contested case before another agency, we held that if the first hearing examiner retires before preparing and serving his findings and conclusions, the party aggrieved is entitled to a hearing *de novo*, "whenever the agency's decision depends to any extent on the credibility of witnesses." *Stevens Chevrolet, Inc. v. District of Columbia Commission on Human Rights*, 498 A.2d 546, 549 (D.C.1985).

Accordingly, in the *Stevens* case, we held that an agency decision based on a record in which there was conflicting testimony, deprived the aggrieved party of his right to have as trier of fact, a person who had heard the witnesses, appraised their credibility, and resolved the conflicts in making his findings. In our opinion, however, *Stevens* is quite distinguishable from the instant case. Here there was no dispute with respect to the facts. The basic issue was a legal one, *viz.*, whether the regulations making the clinic available to retired officers imposed a legal duty upon appellant to give Coleman the benefit of his medical analysis of an electrocardiogram the clinic had obtained from the latter. Plainly, appellant suffered no prejudice from the failure of the agency to grant him a second hearing.

■ On the basic question, we agree with the reviewing court that despite appellant's efforts to demonstrate as invalid the Commissioner's Order extending clinic services to retired policemen, this policy was so well established in the Police Department by subsequent directives and memoranda sent to the clinic personnel—one of which appellant had initialed as receiving— that appellant was under a duty to comply. His contention that he might be personally liable for any malpractice judgment if he did comply borders on the frivolous. He was aware of a letter from the corporation counsel's office that local government counsel would undertake the defense of clinic physicians in malpractice actions and indemnify them should adverse judgments be rendered. Accordingly, we agree with the court below that appellant's removal

---

3. Insofar as relevant, this section of the Code provides:

> Police surgeons shall be subject to such laws, rules, and regulations as the Mayor of the District of Columbia may from time to time, make, alter or amend....

Prior to Reorganization Plan No. 3 of 1967, the powers this section now delegates to the Mayor were vested in a Board of Commissioners by the corresponding statute. Such Board, in 1936, exercised its authority under this section in an order stating "that the retired officers and members of the Police Department are hereby authorized to present themselves at the Police and Fire Clinic during regular clinic hours and there obtain such medical or surgical advice or treatment as can be rendered by the members of the Board of Police and Fire Surgeons." (This order is contained in the minutes of the meetings of the Commissioners' Office, dated May 8, 1936; Vol. 57, Part I.)

from service for "gross neglect of duty" was proper.

*Affirmed.*